UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROGER A. WILLHITE,                          CIVIL NO. 13-910 (ADM/JSM)

      Plaintiff,

v.                                          REPORT AND RECOMMENDATION

FEDERAL NATIONAL
MORTGAGE ASSOCIATION, et. al.

      Defendants.


The above matter came before the undersigned on Defendant's Motion to Dismiss [Docket No. 8] and Defendant's Corrected Motion for Sanctions [Docket No. 17].  This matter was decided on the parties' written submissions.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B) and Local Rule 72.1(c) and the Amended Administrative Order issued by Chief Judge Michael J. Davis on October 16, 2013 [Docket No. 23].

Plaintiff seeks to invalidate the foreclosure of the Mortgage on his home.  Plaintiff asserts three claims against defendants: (1) quiet title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that Federal National Mortgage Association's[1]

---

[1]    In the caption of his Amended Complaint, plaintiff also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

Motion to Dismiss be granted, plaintiff's claims be dismissed with prejudice, and Federal National Mortgage Association's Corrected Motion for Sanctions be denied.

## I.   BACKGROUND

Plaintiff sued Federal Home Loan Mortgage Corporation  in Federal District Court on April 19, 2013.  Complaint [Docket No. 1-1].  Plaintiff filed an Amended Complaint on April 25, 2013, naming Federal National Mortgage Association ("Fannie Mae") as defendant and removing Freddie Mac as defendant.  [Docket No. 5].

The facts bearing on Fannie Mae's motion to dismiss are as follows.  Plaintiff acquired his interest in property in Cambridge, Minnesota ("Property") in October, 2003[2] by Warranty Deed.  Amended Complaint, ¶¶1, 2.  On October 9, 2003, plaintiff executed and delivered a note to Wells Fargo Home Mortgage, Inc. ("Wells Fargo") and a mortgage in favor of Alternative Mortgage Options.  Id., Ex. 1 (Mortgage).  On October 9, 2003, Alternative Mortgage Options assigned its interest in plaintiff's Mortgage to Wells Fargo through an assignment signed by Patrick Rooney, Vice President of Alternative Mortgage Options.  Id., ¶6.  This Assignment of Mortgage was recorded in the Isanti County Recorder's office on October 29, 2003.  Id., Ex. 2 (recorded Assignment of Mortgage).

Plaintiff alleged that Fannie Mae acquired an interest in the Mortgage on November 1, 2003, before commencement of the foreclosure by advertisement but there is no recorded assignment of the Mortgage from Wells Fargo.  Id., ¶7.  In support of this claim, plaintiff attached a screen shot from the KnowYourOptions.com website, which he claims is maintained by Fannie Mae.  Id., Ex. 3 (screen shot dated October 25,

---

[2]     The Amended Complaint stated that plaintiff acquired the Property by Warranty Deed in October, 2013.  Amended Complaint, ¶2.  This is obviously a typographical error.

2012).  Plaintiff alleged that this document showed that Fannie Mae acquired its interest

in the Mortgage on November 1, 2003.[3]  Id.  After Fannie Mae acquired its interest in

the Mortgage, Wells Fargo acted on Fannie Mae's behalf as the servicer.  Id., ¶8.

Plaintiff pled that Fannie Mae invests in mortgage loans originated by sellers and

servicers such as Wells Fargo; Fannie Mae's Seller/Servicer Guides govern the

investment relationship and bind the sellers and servicers; the Guide provides that for a

MERS[4]-registered loan, the servicer must sign an assignment of the mortgage to

Fannie Mae; and according to the Guide, Alternative Mortgage Options delivered an

assignment to Fannie Mae and Wells Fargo commenced a foreclosure, knowing that

there was an unrecorded assignment of the Mortgage.  Id., ¶¶10-12; Ex. 4 (excerpt from

undated Fannie Mae Mortgager Selling and Servicing Contract).

On August 16, 2010, Wells Fargo executed a Notice of Pendency and Power of

Attorney to Foreclose empowering the Reiter & Schiller law firm ("Reiter") to foreclose

on the Property and bid in for the property at the foreclosure sale.  Id., ¶15; Ex. 5

(Notice of Pendency and Power of Attorney to Foreclose).  China Brown executed the

Notice of Pendency and Power of Attorney as Vice President of Loan Documentation for

Wells Fargo.  Id.  Plaintiff pled on "information and belief" that Brown lacked authority to

sign this document and was actually employed by America's Servicing Company when

she signed the document.[5]  Id., ¶16, Ex. 6 (Affidavit of Private Investigator stating that

---

[3]     In fact, this screen shot stated that Fannie Mae acquired the "loan" on
November 1, 2003, and the mortgage company was Wells Fargo.  Amended Complaint,
Ex. 3.

[4]     MERS stands for Mortgage Electronic Registration Services.

[5]     According to Fannie Mae, "[i]t is public knowledge that America's Servicing
Company is an unincorporated division of Wells Fargo, not a separate entity from Wells

Brown resided in Columbia, S.C. in 2010 and was an employee of America's Servicing Company).  However, even if Brown was employed by Wells Fargo, Wells Fargo had no interest in the Property as there existed an unrecorded assignment to Fannie Mae.  Id., ¶16.

Before the foreclosure was completed, plaintiff sued Alternative Mortgage Options and Wells Fargo in state court.  Def. Mem., p. 5.  Wells Fargo removed the matter to district court.  Willhite v. Alternative Mortgage Options, et.al., Civ. No. 11-387 (PAM/FLN), Notice of Removal [Docket No. 1].  Plaintiff challenged the foreclosure on several grounds, including his allegation that Wells Fargo was not the lawful mortgagee.  Def. Mem., p. 5 (citing Complaint, Civ. No. 11-387 (PAM/FLN), [Docket No. 1-1]).  Plaintiff also alleged that the 2010 Notice of Pendency and Power of Attorney were invalid because Brown's signature was invalid.  Id. (citing Complaint, Civ. No. 11-387 (PAM/FLN), ¶¶34-35).  After the close of discovery, Wells Fargo moved for summary judgment.  Def. Mem., p. 6 (citing Civ. No. 11-387 (PAM/FLN), Docket Nos. 9, 18].  On October 25, 2011, the district court granted summary judgment and plaintiff sought leave to move for reconsideration, which the district court denied.  Def. Mem., p. 6 (citing Civ. No. 11-387 (PAM/FLN), Docket Nos. 31, 32, 34, 35).  Following the conclusion of this litigation, the foreclosure process resumed.  Def. Mem., p. 6.

On April 5, 2012, Curt Trisko, as attorney for Reiter, signed a Notice of Pendency of Proceeding to Foreclose[6] and recorded it in the Isanti County Recorder's office on

---

Fargo.  Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), [Docket No. 9], p. 14 (citing https://www.wellsfargo.com/mortgage/manage-account/americas-servicing-company.)

[6]     Plaintiff alleged that Trisko signed a "Notice of Pendency and Power of Attorney" on April 5, 2012.  Amended Complaint, ¶17.  Trisko signed a Notice of Pendency on

April 6, 2012.  Id., ¶17; Ex. 7 (Notice of Pendency).  Plaintiff alleged on "information and belief" that Trisko lacked authority to sign this document because Wells Fargo did not have an interest in the Property, there was an unrecorded assignment of the Mortgage to Fannie Mae, and there was no evidence that Tirsko had the power to execute foreclosure documents on behalf of Wells Fargo.  Id., ¶18.

On August 14, 2012, Wells Fargo noticed a sheriff's sale of the Property and the sale was conducted on October 11, 2012.  Id., ¶20.  Wells Fargo bid in the debt allegedly due to it.  Id.  The Sheriff's Certificate of Sale and Foreclosure Record was recorded in the Isanti County Recorder's office.  Id., ¶20, Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiff alleged that Wells Fargo did not have the legal right to exercise the power of sale in the Mortgage because of the unrecorded assignments.[7]  Id.  Plaintiff pled "on information and belief" that before the sheriff's sale, Wells Fargo transferred the power of sale to Fannie Mae through an unrecorded assignment of mortgage.[8]  Id., ¶21.

Plaintiff alleged that on or about April 13, 2011, Wells Fargo received constructive notice that it had engaged in "unsafe and unsound" banking practices in

April 5, 2012, not a Power of Attorney.  Amended Complaint, Ex. 7.  As stated above, the Power of Attorney had been signed by Wells Fargo in August 2010.  Id., Ex. 5.

[7]     Plaintiff sometimes refers to "unrecorded assignments" (Amended Complaint, ¶20, and sometimes to "an unrecorded assignment."  Id., ¶¶16, 21.  This Court concluded that there are no unrecorded assignments, therefore this confusion in the number of alleged unrecorded assignments is inconsequential.

[8]     In its supporting memorandum and its Reply, Fannie Mae stated that after the foreclosure sale, it acquired title to the property through a deed from Wells Fargo.  Def. Mem., pp. 2-3; Fannie Mae's Reply Memorandum in Support of Motion to Dismiss [Docket No. 14], p. 5.  No documentary evidence was submitted to support this claim.  However, plaintiff conceded that Fannie Mae acquired an "of-record interest in the property after the foreclosure sale."  Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp. Mem."), [Docket No. 12], p. 7.

conducting foreclosures via an Order and Consent Decree between Wells Fargo and the Office of the Comptroller of Currency.  Id., ¶22; Ex. 9 (Consent Order).  Pursuant to the Consent Decree, Wells Fargo agreed to develop an Action Plan and agreed it would comply with Fannie Mae servicing guides and MERSCORP rules.  Id., ¶23.

Plaintiff pled "on information and belief" that Wells Fargo was acting as Fannie Mae's servicer and agent and knew or had reason to know that the October 9, 2003 Assignment of Mortgage, August 16, 2010 Notice of Pendency and Power of Attorney, and April 5, 2012 Notice of Pendency were void.  Id., ¶¶24, 25.

Plaintiff asserted the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq.  This Count alleged that defendants' claim to an interest in the Property was void because: (1) there existed unrecorded assignments of mortgage conveying the mortgagee's power of sale to third parties; (2) Wells Fargo did not have the mortgagee's power of sale on the date of the sheriff's sale; and (3) the foreclosure was void because (a) the individuals executing the foreclosure documents did not have the legal authority to execute the documents when signed, and (b) defendants did not record the necessary powers of attorney authorizing foreclosure.  Id., ¶33.  Count I further alleged that in a quiet title action, defendants have the burden of proof, and consequently, Fannie Mae must prove its interest in the Property by a preponderance of evidence.  Id., ¶32.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.01 et. seq. that the October 9, 2003 Assignment of Mortgage from Alternative Mortgage Options to Wells Fargo Home Mortgage was void; the August 16, 2010 Notice of Pendency and

Power of Attorney was void; the April 5, 2012 Notice of Pendency was void; and plaintiff remained fee owner of the Property.  Id., ¶¶36, 37.

Count III alleged slander of title based on Wells Fargo's recording of documents, "as agent of and acting at the direction of Fannie Mae," that were false and not executed by legally authorized persons, and that Wells Fargo knew or should have known that the documents were false.  Id., ¶¶39-42.

As relief, plaintiff sought a determination of the alleged adverse interests in the property; a declaratory judgment that the mortgage, the Sheriff's Certificate of Sale, the October 9, 2003 Assignment of Mortgage, the August 16, 2010 Power of Attorney and Notice of Pendency, and the April 5, 2012 Notice of Pendency and were void; and an order that plaintiff is the fee owner of the property.   Amended Complaint, Prayer for Relief, ¶¶I, II, III.

Fannie Mae moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the suit was barred by the preclusion doctrines of res judicata and collateral estoppel because plaintiff had already litigated and lost the same claims against the same property in Willhite v. Alternative Mortgage Options, Inc, et al, Civ. No. 11-387(PAM/FLN).  Def. Mem., pp. 8-15.  Second, Fannie Mae contended that plaintiff's suit failed because it rested on speculative contentions regarding a secret, unrecorded assignment of mortgage from Wells Fargo to Fannie Mae in 2003, and that Brown and Trisko lacked the authority to execute the foreclosure-related documents. Id., pp. 16-19.

For the reasons set forth below, the Court concludes that plaintiff fails to state a claim for relief and therefore, defendants' motion to dismiss should be granted.[9]

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

---

[9]      As this Court has determined that plaintiff's underlying claims fail on the merits, it need not decide whether his claims are barred by issue and claim preclusion.  See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549(DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.   The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).  However, as other courts determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiff's suit is barred based on the preclusion doctrines of collateral estoppel and res judicata.  See Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *5-6 (D. Minn. May 22, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013); Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 677 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan

Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall

Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted));

see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc.,

323 F.3d 695, 697 n. 4 (8th Cir. 2003).

## III.   ANALYSIS

### A.   Quiet Title

In Minnesota, "[a]ny person in possession of real property. . . may bring an action

against another who claims an estate or interest therein, or a lien thereon, adverse to

the person bringing the action, for the purpose of determining such adverse claim and

the rights of the parties respectively.  Minn. Stat. §559.01.

In response to Fannie Mae's motion to dismiss the quiet title claim, plaintiff

asserted that all he had to plead was that he was in possession of the Property and that

defendants had an adverse claim to him.  Pl. Opp. Mem., pp. 15-17.  Further, plaintiff

maintained that as Fannie Mae had the burden of proof with respect to his quiet title

claim, the federal rules could not be applied in a manner that denied him state

substantive rights.  Id., p. 17.

The position urged by plaintiff -- that this Court should apply the Minnesota state

court pleading standards to his quiet title claim -- is meritless.  Plaintiff's counsel has

made this exact argument in the past and the Eighth Circuit could not have been more

emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and

12(b)(6)—to the state substantive law to determine if a complaint makes out a claim

under state law." Karnatcheva v. JP Morgan Chase Bank, NA, 704 F.3d 545, 548 (8th

Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank,

N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit has settled the "burden of proof" argument advocated by plaintiff.  See Karnatcheva, 704 F.3d at 548.  As the court explained in Gharwal:

> Karnatcheva rejected that [burden of proof] argument, specifically holding that §559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  Karnatcheva, 704 F.3d at 548.  Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself[10] has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid."  Welk v GMAC Mortg., LLC, 850 F.Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiffs quiet title claims are based only on conclusory statements and speculation, but no facts.  The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiff's quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Mere allegations of a defendant's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a

---

[10]     Both Gharwal and Karnatcheva were represented by William Butler, plaintiff's counsel in the instant case.

claim for relief.   See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

Consequently, plaintiff's wholly unsupported statements on "information and belief" about the alleged lack of legal authority by Brown and Trisko to sign documents, and Wells Fargo's transfer of the power of sale to Fannie Mae before the sheriff's sale, utterly fail the pleading requirements governing actions in this Court.   Amended Complaint, ¶¶16, 18, 24, 25.  Pleading these alleged "facts" on "information and belief," cannot save plaintiff's Amended Complaint.  While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11–3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), on the other hand, the Eighth Circuit and courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.  See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on

Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Servs., LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).  That is the case here.

Here, the documents referenced in and attached to the Amended Complaint show an unbroken chain of title from Alternative Mortgage Options to Wells Fargo, the foreclosing entity.  See Amended Complaint, Ex. 1 (Mortgage), Ex. 2 (Assignment of Mortgage to Wells Fargo).  The Sheriff's Certificate of Sale is prima facie evidence that Wells Fargo complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper.  Minn. Stat. §580.19.  Plaintiff stated no facts in his Amended Complaint to rebut this evidence and none of the documents attached to his Amended Complaint support a claim that there was an unrecorded assignment between Wells Fargo and Fannie Mae before the foreclosure sale.

For example, the screen shot from the KnowYourOptions.com website, stated that Fannie Mae acquired the loan on November 1, 2003, it did not state that Fannie Mae had become the mortgagee, and it explicitly identified Wells Fargo as the mortgage company.  Amended Complaint, Ex. 3.  Plaintiff's claim hearkens back to the scores of "show me the note" cases plaintiff's attorney Butler has brought in this District.  The

Eighth Circuit has stated repeatedly that ownership of the note is not a prerequisite to foreclosure by advertisement—a party holding legal and record title to the <u>mortgage</u> may commence foreclosure, regardless of who owns the note.  <u>See</u> <u>Dunbar</u>, 709 F.3d at 1257; <u>Karnatcheva</u>, 704 F.3d at 547; <u>Butler v. Bank of Amer., N.A.</u>, 690 F.3d 959, 962 (8th Cir. 2012); <u>Murphy v. Aurora Loan Servs.</u>, 699 F.3d 1027, 1033 (8th Cir. 2012); <u>Stein v. Chase Home Fin., LLC</u>, 662 F.3d 976, 980 (8th Cir. 2011).  Wells Fargo was both legal and record holder of title to the mortgage and was entitled to foreclose.

Likewise, the language from the excerpts from the Mortgage Selling and Servicing Contract (Amended Complaint, Ex. 4), does not overcome the deficiencies in the Amended Complaint, much less support a claim that there was an unrecorded assignment from Wells Fargo to Fannie Mae before the foreclosure sale.  First, the seller/servicer contract is an unexecuted form document that makes no reference to Wells Fargo, plaintiff, or plaintiff's mortgage.  This Court has no basis for assuming that this document has any application to the Mortgage in this case.  Moreover, the language relied upon by plaintiff from the contract references MERS.  Amended Complaint, ¶10.  There is no evidence that MERS held any interest in plaintiff's mortgage.

Second, plaintiff's reliance on the language in the Fannie Mae seller/servicer contract to speculate that there must have been an unrecorded assignment of plaintiff's mortgage at a certain point in time, is of no avail.  But even if the language did govern plaintiff's mortgage, it does not provide a plausible inference that an unrecorded assignment to Fannie Mae had actually occurred in 2003 as alleged by plaintiff.  <u>See</u>, <u>e.g.</u>, <u>Richter v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating

"[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.   Plaintiff's allegations do not rise above speculation."); <u>Cheng Lee v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae.   This conclusory allegation is insufficient.").

Third, setting aside these insurmountable obstacles, the seller/servicer contract is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities.   Thus, even if Wells Fargo was a party to the contract and breached its obligations under the contract, that failure would be for Fannie Mae, not plaintiff, to prosecute.[11]   <u>Segura v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, *3 (D. Minn. June 17, 2013) (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative.   The Guide is, at best, a contract between Fannie Mae and its servicers.   It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower.   The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to

---

[11]      Fannie Mae did not raise standing.   Nevertheless, "[c]ourts are 'obligated to examine standing <u>sua</u> <u>sponte</u> where standing has erroneously been assumed. . . .'" <u>Meuir v. Greene County Jail Employees</u>, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting <u>Adarand Const., Inc. v. Mineta</u>, 534 U.S. 103, 109 (2001)).

prosecute."); <u>Welk</u>, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers.  It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower.  So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute.").

As for plaintiff's allegations regarding Brown's lack of authority to sign the August 16, 2010, Notice of Pendency and Power of Attorney and Trisko's lack of authority to sign the April 5, 2012 Notice of Pendency, these speculative claims "do not hold up to even the slightest scrutiny."   <u>Simmer</u>, 2013 WL 6244710, at *3 (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); <u>Segura</u>, 2013 WL 3034096, at *2 (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing <u>Mine v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.); <u>Welk</u>, 2013 WL 2155463, at *4 ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); <u>Stilp v. HSBC Bank USA, N.A.</u>, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), <u>aff'd</u>, 2013 WL 5340399,

at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted); <u>Jackson v. Mortgage Elec. Registration Sys., Inc.</u>, 770 N.W.2d 487, 491 (Minn. 2009) (recognizing that mortgage assignments are executed for MERS by bank representatives).

Additionally, even if there was any truth to plaintiff's speculative statements about Brown and Trisko's lack of signing authority to execute the foreclosure-related documents, plaintiff suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis. <u>See</u> <u>Pope</u>, 2013 WL 2251001, at *3 ("Mr. Butler has insisted for more than two years that the individual named in this and many other complaints, a Ms. China Brown, lacked legal authority to sign on behalf of Wells Fargo. He has yet to produce any evidence in support of this speculative assertion.  But even if Ms. Brown did not have the authority to bind Wells Fargo, then whatever harm caused by that lack of authority is harm to Wells Fargo, not to the Popes or any other borrower. . .[t]hus, even assuming that Ms. Brown was not authorized to sign the documents she signed, the Popes have suffered no harm as a result and do not have standing to challenge her alleged lack of authority.") (internal citation omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage

did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Forseths v. Bank of Am., N.A., Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the

status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object.'") (quoting Jackson, 770 N.W.2d at 500).

Finally, plaintiff's claim that the necessary powers of attorney authorizing the foreclosure were not recorded, (Pl. Opp. Mem., pp. 18-20), is meritless.

Minn. Stat. § 580.05 states:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05 (emphasis added).

The Power of Attorney authorizing Reiter to act on Wells Fargo's behalf in connection with foreclosing on the property by advertisement was recorded on August 20, 2010, in the Isanti County Recorder's office.  Amended Complaint, Ex. 5. The foreclosure sale was noticed on August 22, 2012, and the sale was conducted on October 11, 2012.  Id., Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).  As such, the Power of Attorney was recorded prior to the sheriff's sale, as required by Minn. Stat. § 580.05.   See Smith v. Wells Fargo Bank, N.A., Civil No.13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro & Zielke, LLP, created the

Notice of Sale and caused it to be published, because the Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale. However, the relevant statute does not dictate when the power of attorney must be executed. Rather, it requires only that the power of attorney be recorded prior to the foreclosure sale.  Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012. Thus, Defendant complied with the statutory requirements.").

For all of these reasons, plaintiff's claims in Count I, which rest on bald assertions of an unrecorded assignment from Wells Fargo to Fannie Mae and the purported lack of signing authority by Brown and Trisko, must be dismissed.

**B.    Slander of Title**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an

instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).  Additionally, plaintiff must establish that he relied on the alleged false statement.  See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiff has alleged no facts from which this Court could infer that Fannie Mae made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to her property.  See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim).  Significantly, plaintiff's only response to Fannie Mae's argument in favor of dismissal of this Court was to repeat the allegations in the Complaint and to state that Wells Fargo commenced a foreclosure without recording a mortgage assignment to Fannie Mae.  Pl. Opp. Mem., p. 23.  As this Court previously stated, there is no colorable evidence stated in the Complaint of an unrecorded assignment.  Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[12]

## C. <u>Declaratory Judgment</u>

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American

---

[12]    The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy, 699 F.3d at 1032 (Rule 9(b) applies to slander of title claims); See also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich, 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Fannie Mae did not argue in favor of dismissal based on plaintiff's failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[he is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).  Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[13]

---

[13]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Such is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011

### D.      Corrected Motion for Sanctions [Docket No. 17]

Fannie Mae moved for sanctions pursuant to Federal Rule of Civil Procedure 11(c), 28 U.S.C. §1927, and the Court's inherent authority to sanction attorneys who commit misconduct.   Defendant's Memorandum of Law in Support of Motion for Sanctions, pp. 8-10.  [Docket No. 18].  Fannie Mae sought an award of an unspecified amount of attorneys' fees and costs, to be established by affidavit at a later date.  Id., p. 24.   Fannie Mae argued that plaintiff's counsel, Butler, should be sanctioned for repeatedly pleading and prosecuting claims based on theories that have been rejected time and again by the Eighth Circuit and courts in this district.  Id., pp. 1-2.

Plaintiff opposed the motion, arguing that sanctions were not warranted because he had a factual basis for the allegations in his Amended Complaint and his counsel had not vexatiously or unreasonably multiplied the proceedings or acted in bad faith. Plaintiff's Opposition to Federal National Mortgage Association's Motion for Sanction, pp. 4-20.  [Docket No. 20].

The Court agrees that plaintiff's suit is completely frivolous and that under normal circumstances, sanctions, in the form of an award of fees and costs assessed against his lawyer Butler, are warranted.  But these are not normal circumstances and thus, the Court recommends denial of Fannie Mae's motion for sanctions for the simple reason that an award against Butler will accomplish nothing.

As of September 5, 2013, Butler has been assessed over $320,000 in total sanctions in this District.  Murphy v. Aurora Loan Services, LLC, Civil No. 11–2750

---

WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

(ADM/JJK) 2013 WL 4780959, at *6 (D. Minn., Sept. 5, 2013).  To date, Butler has not paid any of these sanctions.  Id.  For this reason, among others, on July 2, 2013, the District Court opened a miscellaneous file regarding Butler, based on Butler's failure to pay monetary sanctions awarded in a previous case.  Order to Open Miscellaneous Case, Civ. No. 13-mc-49 (MJD).  Chief Judge Michael Davis then appointed the Honorable James Rosenbaum to investigate all cases where Butler is an attorney of record and Butler's fitness to appear before the District Court, and to make recommendations regarding appropriate disciplinary actions or sanctions, if any.  Order, Civ. No. 13-mc-49 (MJD), p. 2 [Docket No. 2].

Based on the Report of Special Disciplinary Counsel,[14] the District Court found that there was probable cause to show that Butler violated Minnesota Rules of Professional Conduct 3.1, 3.3(a), 3.4(c), and 8.4(d) and should be disciplined.  Order to Show Cause dated December 2, 2013, Civ. No. 13-mc-49(MJD), p. 1 [Docket No. 4]. The District Court appointed the Honorable John Tunheim and the Honorable Joan Ericksen to hear and decide the matter.  Id., p. 2.  Butler was ordered to show cause why he should not be disciplined as recommended in the Report of the Special Disciplinary Committee.  Id.  Butler responded to the Order to Show Cause [Docket No. 8].

On December 26, 2013, the Eighth Circuit suspended Butler from practice before the Eighth Circuit "until he has either paid the sanctions ordered to be paid by the United States District Court for the District of Minnesota[15] or the District of Minnesota

---

[14]    This Report is sealed.  Civ. No. 13-mc-49, Docket No. 6.

[15]    The Eighth Circuit explained:

has made findings that he has substantially complied with his obligations to it."  In re William Bernard Butler, Order, 13-9013.

In light of the Eighth Circuit's decision, on January 14, 2014, the District Court suspended Butler and stayed the disciplinary case until such time as Butler is reinstated to practice before the Eighth Circuit.  Order [Docket No. 10].

The primary purpose of awarding sanctions against an attorney who abuses the legal system and promotes frivolous litigation is deterrence.  Murphy, 2013 WL 4780959, at *6.  In light of Butler's long history of ignoring previous sanctions orders, it is evident that they have no effect on his conduct.  Therefore, the Court declines to recommend an award of monetary sanctions to Fannie Mae.  That said, Fannie Mae may provide Judges Tunheim and Ericksen notice of its request for sanctions and its supporting materials, along with this Court's decision, so that they may consider those materials in their deliberations should they be resumed.

---

Since March 29, 2012, the United States District Court for the District of Minnesota has sanctioned attorney William Bernard Butler numerous times for filing over 30 frivolous lawsuits, engaging in "brazen delay tactics and judge-shopping by voluntarily dismissing actions only to turn around and refile them again immediately afterwards," and "repeatedly cycl[ing] the same plaintiffs through different lawsuits, making sure to reshuffle the caption so that a different person appears to be the lead plaintiff." Welk v. GMAC Mortg., LLC, 850 F. Supp. 2d 976, 999–1000 (D. Minn. 2012). To this date he has not paid the sanctions, nor made any arrangement to pay any part of what he owes in the district court. He has meanwhile filed appeals in the United States Court of Appeals for the Eighth Circuit in at least 24 cases involving the same or substantially similar claims and tactics as those for which he was originally sanctioned.

In re William Bernard Butler, Order, 13-9013 (footnote omitted).

**IV. RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.     Defendants' Motion to Dismiss [Docket No. 8] be **GRANTED.**

2.     Defendant's Corrected Motion for Sanctions [Docket No. 17] be **DENIED.**

3.     This matter be dismissed with prejudice.

Dated:     January 21, 2014

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 4, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.